IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
|         Plaintiff                            ) | |
|                                                    ) | |
| v.                                               ) | CRIMINAL NO.: 3:19-CR-30019-MGM |
|                                                    ) | |
| BETH ZASTAWNY,                  ) | |
|         Defendant                         ) | |

**BETH ZASTAWNY'S SENTENCING MEMORANDUM SUPPLEMENT**

Beth Zastawny ("Ms. Zastawny"), through counsel, filed her sentencing memorandum in support of a sentence below the advisory guideline range. (See, Document #13). Ms. Zastawny requested that this Honorable Court exercise its discretion to impose a sentence "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. §3553(a). Since the memorandum was filed her counsel has obtained information relevant to the court's consideration of an appropriate sanction. Ms. Zastawny's cooperation has been more comprehensive and extended beyond providing substantial cooperation with the United States Attorney's Office.

**I.     SUMMARY ARGUMENT**

The first and major basis for imposition of a sentence below the guideline range outlined in her Sentencing Memorandum was Ms. Zastawny's timely and extensive cooperation with authorities which the defendant believes merits a U.S.S.G. s. 5K1.1 motion from the government. The Court should consider all of those factors and the additional information included in this Supplement. It further supports the conclusion that a downward departure pursuant to Section

1

5K1.1 is warranted and a sentence within the Advisory Guideline Range would be greater than necessary. A sufficient sentence would be supervised release or home confinement.

## II. BACKGROUND

As detailed in her Sentencing Memorandum, Ms. Zastawny tried to repair her family relationships and repay the loans she accepted from family and friends. Ms. Zastawny began to work with Anthony Riccitelli ("Riccitelli") from West Providence Real Estate, a former loan officer of Citizens Bank. Riccitelli provided Ms. Zastawny with short-term loans to keep her business afloat before its official closing. With Riccitelli's guidance, Ms. Zastawny refinanced Diecast's debt with several loans with Blue Hills Bank. In furtherance of her cooperation she provided substantial information; the information included, but was not limited to the following;

- Riccitelli contacted Zastawny in the spring of 2014 and indicated he was leaving Citizens Bank ("Citizens") because Citizens was in default with its Parent Company (Royal Bank of Scotland) and as a result of this default, Citizens would be making substantial changes, especially with Small Business Lending. Riccitelli and his entire team (including his boss, Marilyn) were going to Blue Hills Bank ("Blue Hills"). Zastawny asked who would be replacing him because DieCast was in need for a $300,000 equipment loan for a new paint project with American Saw. Riccitelli indicated most likely nobody soon and further indicated she should not count on Citizens to provide her an equipment loan in time to meet the new project launch date. Riccitelli asked Zastawny to "hold off" on requesting a loan from Citizens and he would take care of her loan needs once he and Marilyn were settled at Blue Hills.

- In the fall of 2014, after leaving the employ of Citizens and becoming employed at Blue Hills, Riccitelli contacted Zastawny. During these discussions he indicated that he and his boss "desperately" needed to book all of DieCast's existing loans and any new loans needed, including a new equipment loan for the new paint line. He shared with Ms. Zastawny that their goal was $11Million of new loan bookings. During these discussions,

2

he indicated that he did all the underwriting for Blue Hills and he only needed one signature to get the loans approved. He also indicated that he had copied all of the documents from the Citizens files prior to leaving as he and his boss had targeted DieCast as a new customer for Blue Hills.

- In order to close the new loan Riccitelli terminated a UCC filing he had filed under Seamass Financial Group, LLC ("Seamass") and West Providence Real Estate, Inc. ("West Providence").

- In addition, Riccitelli communicated to a TD Bank loan officer that TD needed to subordinate the lien on Zastawny's personal Condo in Virginia in order for Blue Hills to move forward on the loan with Zastawny. The TD loan officer agreed, and as a result, Riccitelli's mortgage held by West Providence securing his loan moved from a subordinate position into a first position on Zastawny's Virginia Condo.

- In furtherance of his plan, Riccitelli informed Zastawny that a field exam was required as a pre-condition to refinancing her loans. In response to this request, Zastawny explained DieCast would not pass a field exam because its accounting records were not up-to date and inadequate. Riccitelli indicated he would engage Jim Lowe, a field examiner Riccitelli previously used to conduct field exams, and that he would coordinate a field exam being submitted to Blue Hills on behalf of DieCast. He also told her he would send her copies of examples of field reports and explained to her how she should write the field report which would be provided to Mr. Lowe to be submitted to Blue Hills. Thereafter, Riccitelli contacted Mr. Lowe and gave him instructions on how to handle the submittal of the field exam report to Blue Hills. Since Blue Hills was paying for the field exam – Mr. Lowe followed Riccitelli's instructions.

- In furtherance of Riccitelli's plan, Zastawny sent copies of internal/interim financials to Riccitelli on several occasions. Zastawny informed Riccitelli on more than one occasion that the money lent to DieCast by Riccitelli and Zastawny's family and friends was not properly reflected in the financial statements of DieCast. Originally the loans from Riccitelli, family and friends were reflected on the financial statements submitted. Riccitelli instructed that they be removed otherwise the identity of who loaned the money would need to be disclosed. Riccitelli assured Zastawny not to worry and moved forward

with his scheme to refinance DieCast's loans for his personal financial gain. Also, in furtherance of his plan, Riccitelli told Zastawny to destroy any evidence of cancelled check payments to him or any member of his family to make sure they were not discovered during the field exam.

- The loan closing was initially scheduled for December of 2014 as DieCast needed the infusion of additional funds as soon as possible to fulfill the anticipated new orders, however, Riccitelli contacted Zastawny and told her he had to postpone the closing until early 2015, as he would not receive his bonus if the closing occurred in 2014 versus 2015. Zastawny resisted Riccitelli's request and explained that she needed to put a deposit on the paint equipment or she would miss the launch date for the new contract. In an effort to appease Zastawny and to assure he would receive a bonus, Riccitelli personally loaned DieCast $70,000 from an entity he owned and/or controlled. In addition to forcing Zastawny/DieCast to potentially jeopardize the new contract and viability of DieCast, Riccitelli forced Zastawny to pay him $10,000 interest on his $70,000 loan which was outstanding for only approximately thirty (30) days. In addition to improperly providing Zastawny with a personal loan, the interest charged by Ricittelli also violated the usury laws in effect at the time. Ultimately Zastawny paid Riccitelli back $80,000 for a $70,000 loan for thirty (30) days. Zastawny used the proceeds from the Riccitelli loan to pay a deposit on the equipment needed for DieCast's anticipated new contract with American Saw. Ironically, this loan to Riccitelli is one of the counts for money laundering.

- On the day of closing, the subordination agreement required by Blue Hills as a pre-condition to close the DieCast refinance was not executed by New Bedford Economic Council ("NBEC"). Not to be deterred in his continuing efforts, Riccitelli closed on the loan, despite it being a clear violation of his fiduciary duty to Blue Hills, Zastawny and DieCast.

- After the loan closing, Riccitelli contacted Zastawny and instructed her to use the loan proceeds from the Blue Hill closing and pay off the balance of the outstanding NBEC loan as Riccitelli was concerned that Blue Hills would recognize that the subordination agreement was not signed resulting in Blue Hills' UCC filing being subordinate to NBEC's

UCC. Zastawny informed Riccitelli that DieCast did not have the money to pay off the balance at the time of his request.

- In furtherance of his scheme, Riccitelli told Zastawny that he would make payments on the NBEC loan as DieCast was behind in loan payments and as such, in default. Riccitelli, knowing that NBEC UCC filing was ahead of Blue Hills bank, did in fact make said payments. Prior to and throughout the orchestration of Riccitelli's scheme he always used the same attorney for both his personal or bank closings. That attorney was involved with the following:

    - Seamass loan and UCC filings
    - West Providence loan and UCC filings and UCC terminations
    - Closing Attorney for Citizens – for which he received the subordination agreement from NBEC.
    - Closing Attorney for Blue Hills – which he knew or should have known that he did not receive the subordination agreement from NBEC.

- Both before and after the Blue Hills closing with DieCast, Riccitelli contacted Zastawny on several occasions and told her not to discuss the West Providence Real Estate loan with anyone from Blue Hills.

### III.    LAW AND ARGUMENT

#### A. The Sentencing Guidelines Allow for a Downward Departure in Sentencing Based on Substantial Assistance to Authorities

As enumerated in her Sentencing Memorandum Ms. Zastawny's substantial assistance to authorities warrants a downward departure in sentencing. The Commentary and Notes to 18 U.S.C. s. 3553(c) provide in pertinent part:

> A defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statute as a mitigating sentencing factor. The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis. Latitude is, therefore, afforded the sentencing judge to reduce a sentence based upon variable relevant factors…

18 U.S.C. s. 3553(c). Commentary – Application Notes 3.

A court may depart downward where the defendant's cooperation with the government in either the investigation at bar or in other matters rises to the level of substantial assistance. U.S.S.G. s. 5K1.1. Immediately following her indictment, Ms. Zastawny timely and extensively cooperated with the government. She provided the government with information regarding Riccitelli's ("AR") involvement and orchestration of the matters which are the subject of this case, ultimately leading to his indictment in the United States District Court on charges of Participation in Loan with Financial Institution pursuant to 18 U.S.C. s. 1005.

Without Ms. Zastawny's cooperation with the government the United States Attorney's Office would not have the pertinent information and background to charge Riccitelli with defrauding Blue Hills Bank by obtaining $80,000.00 of loan proceeds provided to Ms. Zastawny's company, DieCast . The courts grant variances in sentencing based on less cooperation and assistance than what Ms. Zastawny has provided here, including granting downward departures for defendants whose cooperation breaks down or for defendants who flee and lose the government's willingness to file a s.5K1.1 motion. *United States v. Tenzer,* 213 F.3d 34 (2d Cir. 2000); *United States v. Castellanos,* 2008 WL 5423858 (D. Neb. Dec. 29, 2008). MS. Ms. Zastawny acted timely and in good faith in her extensive cooperation efforts. Therefore, she should receive a substantial downward departure below the advisory guideline range.

Beyond her cooperation with the United States Attorney's office Ms. Zastawny provided material cooperation to the Traveler's Insurance regarding the breath of the misconduct and fraud by Riccitelli in the loans that Blue Hills Bank gave to DieCast. They totaled approximately $4.2 Million Dollars. Blue hills bank has an employee dishonesty bond with Travelers Insurance Company and made claim for payment under the bond based on Mr. Riccitelli's conduct. As a

6

result of Ms. Zastawny's cooperation; Traveler's Insurance has agreed to pay Blue Hills Bank the entire amount in accordance with their bond because of the extent of the misconduct by Riccitelli to get the loans approved and receive unjust commissions as the loan originator with Blue Hills Bank.  Counsel was notified on December 12, 2019 that Traveler's had agreed to pay Blue Hills Bank on their bond in full.  Riccitelli's fraud perpetrated upon Blue Hills Bank as detailed by Ms. Zastawny was recognized and relied upon by Traveler's in deciding to pay Blue Hills the full loss on the bond. That amount would also include the $70,000.00 Riccitelli gave to Ms. Zastawny and that was repaid to him, along with $10,000.00 in interest from the Blue Hills loans.

1. **CONCLUSION**

Ms. Zastawny plead guilty to the offenses in the indictment on May 21, 2019, pursuant to a plea agreement with the U.S. Attorney's Office.  Pursuant to the Sentencing Guidelines for the offenses in the indictment, Ms. Zastawny respectfully requests a term of supervised release as deemed appropriate by the Court. "Congress intended that probation would be the presumptive sentence for first time offenders not convicted of a crime of violence of otherwise serious offense." 28 U.S.C. s.944(j).

In addition to the arguments outlined in her Sentencing Memorandum Ms. Zastawny would assert that her cooperation was above and beyond the cooperation provided to the United States Attorney (that cooperation was certainly material to the indictment of Riccitelli) and extended to assist Blue Hills Bank in uncovering an extensive fraud by Riccitelli that provided the basis for Blue Hills Bank to successfully recoup the entire amount of the loans made to DieCast.  Ms. Zastawny has no control over the Government's decision to forgo prosecuting Riccitelli on the entire amount of the fraud ($4.2 Million Dollars) he committed upon Blue Hills Bank.

With the payment from Traveler's to Blue Hills Bank the court should also reduce her restitution amount by the $70,000.00 loan and the $10,000.00 interest paid to Riccitelli from the loans made by Blue Hills Bank to DieCast and repaid by the bond from Traveler's Insurance. Otherwise Ms. Zastawny would essentially be required to pay that same amount of restitution twice.  Further, any restitution Ms. Zastawny is ordered to pay should be joint and several with Mr. Riccitelli.

        Respectfully submitted,
        BETH ZASTAWNY,
        By and through her attorney,

        */s/ Raipher D. Pellegrino*
        Raipher D. Pellegrino, Esquire
        BBO# 560614
        Raipher, P.C.
        265 State Street
        Springfield, MA 01103
        Tel. No.: (413) 746-4400
        Fax. No.: (413) 746-5353
        E-mail: rdp@raipher.com

## Certificate of Service

I, Raipher D. Pellegrino, hereby certify that on this 3rd day of January, 2020, I have served all parties of record registered with ECF for this matter with a true copy of the foregoing motion by virtue of transmitting the same to the Court via the CM/ECF system.

        */s/ Raipher D. Pellegrino*